

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 5, 2007

By Hand Delivery

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

    Re:    United States v. Yaw Nketia
              06 Cr. 893 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in opposition to the defendant's March 2, 2007 in limine motion seeking an order pursuant to Federal Rules of Evidence 402, 403, and 404(b) precluding the Government from introducing certain evidence at trial. For the reasons that follow, the in limine motion should be denied because the proffered evidence is both directly relevant to prove the scheme alleged in the Indictment and, in any event, admissible under Rule 404(b) as probative of the defendant's motive, intent, knowledge and/or absence of mistake.

      A.    Background and the Evidence the Government Expects to Elicit at Trial

      The defendant is charged in a 14 Count Indictment with assisting in the preparation fraudulent income tax returns for clients of his tax preparation business, Caesar Tax & Brokerage Services ("Caesar's"). (Indictment ¶¶ 1, 3, 4.) Specifically, the Indictment alleges that the defendant prepared U.S. Individual Income Tax Returns, Forms 1040, and supporting schedules, for the tax years 2000 through 2002, knowing those tax returns and accompanying schedules contained false and fraudulent information. (Id. ¶ 3.) The Indictment alleges, and the evidence at trial will show, that the defendant committed the charged offenses as part of a scheme of preparing false returns, primarily through the use of false dependants and/or overstated itemized deductions. (Id.)

      The Government expects to call a number of taxpayers whose returns are identified in Counts 1 through 14. Although each witness's experience with the defendant is slightly different, the Government expects that they will all testify that (1) their returns were prepared by the defendant, (2) their returns listed fictitious foster children as dependants and/or contained

Hon. Kenneth M. Karas March 5, 2007
Page 2

fictitious itemized deductions, and (3) they did not supply the fictitious information to the defendant.

The evidence at trial will establish that the defendant's conduct charged in Counts 1 through 14 was part of a scheme to assist in the preparation of false returns. The evidence will include:

(1) an undercover operation conducted at the defendant's office on April 9 and April 10, 2003 in which the defendant discussed and prepared a return for the undercover listing a "foster child" which the defendant knew was not a bona fide dependant of the undercover;

(2) the number of tax returns prepared by the defendant for each of the tax years 1998 through 2004 and the refund rates he obtained for those tax years, reflecting a rapidly expanding volume business from 1998 through 2002 with refund rates of at least 95%;

(3) tax returns prepared by the defendant for tax year 2002 which show hundreds of returns that were rejected by the IRS's electronic filing system for reasons having to do primarily with improperly listed dependants (e.g., dependants who had previously been listed on other returns or dependants whose names did not match the listed social security numbers), and the subsequently accepted returns prepared by Nketia for these same taxpayers, many of which included "foster children" claimed as dependants; and

(4) other returns prepared by the defendant for the taxpayers identified in Counts 1 through 14.

    B.    Discussion

        1.    Applicable Law

Each category of proffered evidence described above is admissible for two independent reasons.

First, the proffered evidence is admissible to prove the defendant's scheme to fraudulently generate income tax refunds and credit for his clients as described in paragraph 3 of the Indictment. Evidence concerning non-charged tax returns that are part of the same series of transactions as the specific charged offenses, or are inextricably intertwined with the evidence regarding these specific charged offenses is necessary to tell the complete story of the charged offenses. Such evidence is necessary to give the jury a complete and accurate picture of the defendant's criminal conduct. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (uncharged crimes not subject to Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial"); United States v. Skowronski, 968 F.2d 242, 246 (2d Cir. 1992) ("[E]vidence that does not directly

Hon. Kenneth M. Karas  March 5, 2007
Page 3

establish an element of the offense charged [is admissible] in order to provide background for the events involved in the case.").

  Second, the evidence concerning other tax returns prepared by the defendant is admissible under Rule 404(b) to prove "motive . . . intent . . . knowledge, . . . [and] absence of mistake or accident." Fed. R. Evid. 404(b). As explained by the Second Circuit,

> Rule 404(b) allows evidence of other crimes, wrongs or acts to be admitted for purposes other than showing a propensity to act in a certain manner, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Under the "inclusionary approach to the rule followed by this circuit, such evidence is "admissible for any purpose other than to show a defendant's criminal propensity."

United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (quoting United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984)); see also United States v. Germosen, 139 F.2d 120, 127 (2d Cir. 1998); United States v. Stevens, 83 F.3d 60, 68 (2d Cir. 1996). As long as such evidence is "'relevant to some disputed issue at trial,' and satisfies the probative-prejudice balancing test of Fed R. Evid. 403" it is admissible. United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986) (quoting United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980)).

  Here, the Government must prove that the defendant willfully assisted in the preparation of false tax returns.[1] Willfulness in the context of violations of criminal tax statutes means a "voluntary, intentional violation of a known legal duty." United States v. Bishop, 412 U.S. 346, 360 (1973); Spies v. United States, 317 U.S. 492, 498 (1943). By pleading not guilty and putting the Government to its proof, the defendant has put his willfulness, and, therefore, the question of intent at issue. In fact, because, the Government believes, there will be no serious dispute that the tax returns at issue were both false and filed with the IRS, the facts likely to be in serious dispute will relate to the defendant's willful assistance in the false filings, i.e., his intent. Where there is no doubt that the issue of intent will be disputed, the admission of Rule 404(b) evidence in the Government's direct case is appropriate. United States v. Colon, 880 F.2d 650, 660 (2d Cir. 1989) (citing United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987)).

---

[1] The crime of assisting in the preparation of false tax returns has three elements: (1) that the defendant advised or assisted in the preparation of a federal tax return, which was subsequently filed with the IRS; (2) that the return contained at least one entry that was materially false; and (3) that the defendant acted willfully at the time he aided or assisted the preparation or presentation of the materially false return. See Sand, Modern Federal Jury Instructions, Instruction 59-27; United States v. Perez, 565 F.2d 1227, 1233-34 (2d Cir. 1977); charge of the Hon. Jed S. Rakoff in United States v. Contreras, 04 Cr. 1363 (JSR) (Dkt. # 15).

Hon. Kenneth M. Karas                                                                                           March 5, 2007
Page 4

As described below, each category of evidence relating to non-charged tax returns should be admitted both as relevant to proving the scheme alleged in the Indictment as well as under the requirements of Rule 404(b).

        2.        Evidence of the Undercover Operation

On April 9, 2003, the Government sent an undercover IRS agent posing as a Nigerian immigrant into Nketia's office to have a 2002 tax year income tax return prepared. The undercover provided the defendant with information that, if reported accurately, would have resulted in a federal tax return showing that the undercover owed additional taxes. Rather than preparing such a return, the defendant explained to the undercover that she could receive a refund if she could find someone to give her a dependant or dependants to list on her return. The undercover returned to the defendant's office the following day with a name and social security number that she informed the defendant had been given to her by an American friend. The defendant participated in the preparation of a return that falsely listed that dependant as a "foster child" of the undercover when the defendant had already been informed by the undercover that she had no qualifying dependants. See generally GX 20-30.

The evidence about the undercover operation is probative of the ongoing nature of the defendant's scheme to prepare fraudulent returns and the defendant's willfulness with respect to the specific crimes charged. The Indictment alleges that the defendant engaged in fraudulent conduct with respect to tax returns filed for the tax years 2000, 2001, and 2002. The tax return that the defendant prepared for the undercover was for the 2002 tax year, and it contained a fictitious dependent described as "foster child," as do many of the returns charged in the Indictment. Evidence of the undercover operation makes it clear that the Nketia included a fictitious dependant on a return knowing it was false. The Indictment includes other tax returns that the defendant prepared in 2003 for the 2002 tax year and his conduct with respect to the undercover is thus probative of the ongoing scheme.

Moreover, the undercover operation is relevant to the defendant's state of mind for Rule 404(b) purposes. The Government will prove that foster children listed on the Indicted returns were not in fact that foster children of the taxpayers. The defendant's only viable answer to this fact is to claim either that unknown to him, the clients themselves provided him with false information and/or he simply made an error in including the information on the Indicted returns. Evidence that the defendant educated the undercover about providing fictitious dependents, and then using the fraudulent information provided by the undercover to prepare a return that would entitle her to a refund is highly probative of the defendant's intent as it relates to the listing of fake foster children on the Indicted returns.

The defendant's arguments to preclude evidence of the undercover operation are meritless. First the defendant argues that allowing the evidence will result in a constructive amendment of the Indictment and run the risk of the jury convicting the defendant of a crime with which he was not charged. There is no such risk here. The jury should be asked on the

Hon. Kenneth M. Karas                                                                                                                March 5, 2007
Page 5

verdict form to specifically render a verdict of guilt or innocence only with respect to the specific returns charged in the Indictment. Moreover, the jury can and should be instructed that with respect to the undercover operation, such evidence is offered to prove the nature of the defendant's scheme, as well as his knowledge, intent, and absence of mistake, and that the defendant cannot be convicted of a crime for simply assisting in the preparation of the undercover's tax return.

Second, the defendant argues that evidence of the undercover operation is not relevant because "there was an extensive lapse of time between many, if not all, of the tax filings in the Indictment and the undercover operation." (Def. Ltr. at 5.) This contention is factually incorrect. The undercover operation took place during April 2003, in the tax season for the filing and preparation of 2002 tax year returns. The Indictment contains 7 counts relating to the 2002 tax year. In addition, as to conduct alleged to have occurred in earlier years, the Indictment contends that the defendant engaged in an ongoing scheme which dated from at least 2000 through 2003. Thus, conduct in 2003 is relevant to proving conduct throughout the duration of the alleged scheme.

Finally, the defendant contends that probative value of the undercover operation is also substantially outweighed by "the danger of prejudice to the defendant." (Def. Ltr. at 10). Prejudice to the defendant is not the relevant inquiry. All evidence tending to show the defendant is guilty is prejudicial. The test is whether or not the probative value of the evidence is outweighed by the risk of "unfair prejudice," to the defendant, i.e., the risk that the jury will misuse the evidence for some impermissible purpose. Fed. R. Evid. 403. Here, given proper instructions, the risk of unfair prejudice is extremely small because the evidence goes right to the heart of the defendant's intent, and will not tend to inflame or confuse the jury in any way because it is generally of the same type that the jury will hear from the witnesses whose tax returns are referenced in the Indictment.[2]

        3.     <u>Evidence Concerning Other 2002 Returns Prepared by the Defendant</u>

The Government expects to introduce evidence showing that for tax year 2002, the defendant attempted to file hundreds of tax returns that were rejected by the IRS's electronic filing system because of various problems with the social security numbers of the dependants listed on the returns, such as the social security number had previously been used on another

---

[2] The defendant also asks the Court to preclude the use of a videotape taken during the undercover operation. (Def. Ltr. at 6.) The Government does not intend to offer the videotape because of its generally low quality and the fact that it is incomplete. Nonetheless, the Government will offer at least one still frame of the defendant taken from the video. The foundation for the still frame will be laid by the undercover and the completeness of the video is simply irrelevant to the admissibility of a still photo clearly identifying the defendant as the person speaking to the UC about the preparation of her tax return.

return or did not match the name listed on the return.  See GX 36 and GX 37.  In many instances returns for the taxpayers identified on the reject list were subsequently filed successfully by Nketia.  Many of these returns listed foster children as dependants.  See GX 38.

The large number of rejected returns and the reasons for the rejection is highly probative both as evidence of the ongoing nature of the defendant's scheme as well as on the question of the defendant's willfulness in assisting in the preparation of returns with fraudulent dependent information.  This evidence demonstrates that Nketia regularly filed returns with false dependent information and that such filings were not isolated accidents or mistakes.  As Nketia explained to the undercover, filing electronically allowed Nketia to learn quickly whether the dependant information he had included on a particular return was "okay or not."  See GX 24-T at p. 2.  Further, the evidence that Nketia subsequently filed returns listing foster children dependants for the taxpayers who appear on the reject list that is GX 36 supports the conclusion that he was including dependant information that he knew was not genuinely associated with the taxpayer for whom he was preparing the return.  Rather, Nketia used the IRS's electronic filing system to test the validity of social security numbers that were used to fraudulently lower the client's taxable income and/or qualify them for an Earned Income Tax Credit.

The defendant's objections to this evidence as irrelevant and impermissibly broadening the Indictment should be rejected.  The proffered evidence is limited to the 2002 tax year – the height of the defendant's fraudulent activity – and will demonstrate that the use of fraudulent dependants was a modus operandi of the defendant's tax preparation business.  The sheer volume of rejected returns coupled with the successful refiling of large numbers of returns listing foster children as dependants tends to prove that the listing of fake dependants was intentional and not a result of accident or mistake.

        4.        Evidence Concerning the Volume of the Defendant's Business and Refund Rates

The Government intends to offer evidence concerning the growth in volume of the defendant's business as well as evidence concerning the percentage of returns filed by the defendant that claimed a refund.  This evidence is probative of the defendant's motive for committing the charged offenses: namely, his efforts to build a high volume tax return business by getting his clients refunds.

The evidence will show that the defendant operated a business that increased significantly in volume every year from 1999, when he filed only 264 returns (for tax year 1998), through 2003, when he filed 3,974 returns (for tax year 2002).  During this same period, the returns prepared by the defendant claimed refunds in at least 95% of the cases.  Thereafter, in May of 2003, the defendant was interviewed by the IRS, and was informed that he was the subject of a criminal investigation.  The following year, 2004, the defendant filed 1,673 returns (for tax year 2003), a decrease of 58% from the previous year and in the years that followed, the defendant's business remained flat.  The defendant typically charged between approximately

Hon. Kenneth M. Karas                                                                                        March 5, 2007
Page 7

$100 and $150 to prepare a return. The way he made money was by preparing a large number of returns. In fact, certain of the Government's witnesses are expected to testify that they went to Nketia specifically because they had heard that he got his client's large refunds. The rapid growth in Nketia's business over the years that the Indictment alleges he was preparing fraudulent returns provides significant evidence of why the defendant would knowingly commit a federal crime when he stood to gain relatively little money for each specific offense. Evidence that he prepared an expanding volume of such returns, most of which claimed refunds, is highly probative of that motive.

The defendant's contention that the proffered evidence is irrelevant simply ignores its probative value on the question of motive. The defendant also contends that evidence concerning the percentage of returns prepared by the defendant that claimed a refund will raise questions regarding compilation and analysis of the data as well as the demographics of the individual taxpayers. This contention should likewise be rejected. The Government does not seek to argue that the defendant's refund rate is high relative to some standard. Rather, the Government's contention is that the absolute value of the refund rate (95% or higher in the tax years 1998 through 2002), is probative on the motive question; namely that the defendant grew a high volume business by getting his clients refunds. When a client would not otherwise qualify for one, the defendant had a motive to get the client a refund anyway.

        5.        Evidence Concerning Uncharged Returns Prepared by the Defendant for Taxpayers Referenced in the Indictment

Some of the taxpayers referenced in the Indictment went to Nketia for assistance in preparing returns for years other than those charged in the Indictment. Some of those returns were also fraudulent. In order for the witnesses to fully tell the story of their dealings with Nketia, they should be permitted to testify concerning other returns prepared for them by the defendant. In some instances, the witnesses will testify that other returns prepared for them by Nketia also contained material false statements. Such evidence is both inextricably intertwined with the evidence regarding the specific charged offenses, and, is, therefore, necessary to complete the story of the crime on trial. Moreover, under Rule 404(b), it is probative on the question of intent. Multiple fraudulent returns for the same taxpayer would tend to undermine any claim by the defendant that his participation in the filing of the charged false return was anything other than intentional.

Hon. Kenneth M. Karas  March 5, 2007
Page 8

      C.      Conclusion

For the reasons stated herein, the defendant's motion in limine should be denied it its entirety. The Government's proffered evidence relating to returns other than those specifically charged in the Indictment is relevant both to prove the nature of the defendant's ongoing scheme, as well as to prove the defendant's motive, intent, knowledge and/or absence of mistake or accident with respect to the charged false filings.

                      Respectfully submitted,

                      MICHAEL J. GARCIA
                      United States Attorney

        By:    /s William C. Komaroff
                William C. Komaroff
                Todd Blanche
                Assistant United States Attorneys
                (212) 637-1111/2494

cc:    Roland R. Acevedo, Esq. (by fax)