UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
          - against -                                       :         06 CR 893 (KMK)
                                                            :
                                                            :
YAW NKETIA,                                                 :
                                                            :
                    Defendant                               :
                                                            :
------------------------------------------------------------x

**DECLARATION OF DAVID MEISTER**

DAVID MEISTER, pursuant to 28 U.S.C. §1746, hereby declares under penalty of perjury as follows:

1. I am a partner with the firm Clifford Chance US LLP, counsel for Yaw Nketia in this matter. I am a member of this Court's Criminal Justice Act Panel. On June 14, 2007, I was appointed by the Court to represent Mr. Nketia following his conviction after a jury trial. I am submitting this declaration in support of Mr. Nketia's motion for a new trial.

2. After I was appointed by the Court, I became familiar with the prior proceedings in this case. I have learned that, pursuant to former defense counsel's request, on November 22, 2006, the Government began to make pretrial discovery and noted that it would comply with its obligations under *Brady v. Maryland*. *See* Exhibit A.

3. By letter dated February 16, 2007, the Government advised the defense of its view that evidence of the number of returns Mr. Nketia prepared beyond the 14 then alleged in the Indictment was directly relevant and probative of the alleged scheme to prepare materially false tax returns. *See* Exhibit B. Although the Government considered the evidence directly probative, the Government went on to note that, in an "abundance of caution," it was providing notice of such evidence pursuant to Fed. R. Ev. 404(b), asserting that the evidence would also be admissible under this alternative evidentiary theory.

4. Under cover of a letter dated March 2, 2007, the Government provided the defense with four binders of documents. *See* Exhibit C. The binders included, among other things, IRS records reflecting the number of returns purportedly filed by Mr. Nketia for each of the years 1998 through 2005. These IRS records were marked as GX 39 through 46, respectively. These Government Exhibits are attached hereto as Exhibit D. I do not know whether the Government previously provided such records to the defense.

5. By letter dated March 2, 2007, the defense moved *in limine* for, among things, an order precluding evidence of the number of returns Mr. Nketia prepared for each of the tax years 1998 through 2004. *See* Exhibit E. The defense argued that admission of such evidence would constructively amend the Indictment because the charges in the Indictment were limited to returns filed for tax years 2000 through 2002, and that the evidence was not relevant for similar reasons. *Id.*

6. By letter dated March 5, 2007, the Government opposed the motion. The Government stated that evidence "concerning the growth in volume of the defendant's business" was "probative of the defendant's motive for committing the charged offenses: namely, his

efforts to build a high volume tax return business by getting his clients refunds." *See* Exhibit F. According to the Government, given that Mr. Nketia charged a flat fee for each return,

> [t]he way he made money was by preparing a large number of returns. In fact, certain of the Government's witnesses are expected to testify that they went to Nketia specifically because they had heard that he got his client's [sic] large refunds. The rapid growth in Nketia's business over the years that the Indictment alleges he was preparing fraudulent returns provides significant evidence of why the defendant would knowingly commit a federal crime when he stood to gain relatively little money for each specific offense. Evidence that he prepared an expanding volume of such returns, most of which claimed refunds, is highly probative of that motive.

*Id.*

7.   On March 7, 2007, the Court denied the defense motion.

8.   During the trial, the Government used a summary chart to highlight the growth in Mr. Nketia's business over time. A copy of the chart, GX 101, is attached as Exhibit G.

9.   As a tax return preparer Mr. Nketia used the services of "TaxWise," a company that provides tax preparation software and electronic filing services. After I was appointed to represent Mr. Nketia, I received an exchange of correspondence between TaxWise and former defense counsel, dated March 28, 2007. The TaxWise letter reflects that Mr. Nketia used TaxWise services to electronically file far fewer returns than indicated by the Government's trial evidence. *See* Letters attached as Exhibit H.

10.  I then contacted TaxWise in an effort to obtain information about Mr. Nketia's use of TaxWise, and spoke with a TaxWise employee. The TaxWise employee agreed to report back after a check of their relevant records. During a subsequent conversation, however, the

3

TaxWise employee alerted me that his co-worker had taken it upon himself to contact someone at the IRS with respect to the figures in question, and that the IRS had confirmed that IRS records of the number of returns filed under Mr. Nketia's EFIN were substantially the same as the figures reflected in TaxWise's records.

11.    My conversations with TaxWise thus gave me reason to believe that certain IRS records that had never been disclosed contradicted the Government's evidence and materially undercut the Government's theory at trial.  Unable to obtain such records, however, I telephoned a prosecutor in charge of this case, and asked whether such records existed.  The prosecutor informed me that he and his colleague in the U.S. Attorney's Office were unaware of such records.  Later the same day he confirmed the existence of IRS records that had never been disclosed to defense, that reported the number of returns filed under Mr. Nketia's "EFIN" (Electronic Filer Identification Number).  The Government produced a copy of such a record as an exhibit to the Government's letter to the Court, dated September 12, 2007.  This newly discovered IRS record is attached as Exhibit I.

12.    According to these newly discovered IRS records, Mr. Nketia electronically filed materially fewer returns than reflected in the Government's evidence, its summary charts, and in the Government arguments to the Court and jury.  For comparative purposes, we have prepared a summary chart formatted in a fashion similar to the Government's summary chart at trial but which shows the true number of returns electronically filed by Mr. Nketia based on the newly discovered IRS records, attached as Exhibit J.  *Compare* Exhibit G.

13.    The prosecutor further informed me that the RPVUE records reflecting the returns filed for the tax year 2002 could not be reproduced.

4

14. As noted above, the prosecutors in charge of this case have informed me that they were previously unaware of the existence of these newly discovered IRS records, and I do not dispute that assertion. I do not know, however, whether the IRS agents who participated in this prosecution were aware of these records. In any event, the Government is chargeable with the knowledge of the existence of the records under applicable caselaw, as explained in the accompanying Memorandum of Law.

15. I understand that neither defense counsel nor Mr. Nketia were aware of the newly discovered IRS records.

Dated: October 9, 2007
      New York, New York

_____
David Meister