SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia  06 Cr. 893
Page 4 of 10


    The Government seeks to introduce evidence of the
undercover operation to prove intent and knowledge.
Because defendant is not charged in connection with the
undercover operation and the recordings appear to have
occurred after the crimes charged in the Indictment, the
evidence is not relevant, highly prejudicial, will confuse
and mislead the jury, unnecessarily lengthen the trial and
should be excluded.

    A court must be vigilant in enforcing the Fifth
Amendment's requirement that a person be tried only on the
charges contained in the Indictment returned by the Grand
Jury. *See United States v. Mollica*, 849 F.2d 723, 729 (2d
Cir. 1988). "The very purpose of the requirement that a
man be indicted by the grand jury is to limit his jeopardy
to offenses charged by a group of his fellow citizens
acting independently of either prosecuting attorney or
judge." *United States v. Zingaro*, 858 F.2d 94, 98 (1988),
*citing Stirone v. United States,* 361 U.S. 212, 218 (1960).
After an Indictment has been returned, its charges may not
be broadened except by the Grand Jury, and a court cannot
permit a defendant to be tried on charges that are not
found in the Indictment. *United States v. Fasciana*, 226 F.
Supp.2d 445, 449 (S.D.N.Y. 2002). An unconstitutional
amendment of the Indictment occurs when the charging terms
are altered, resulting in a likelihood that a defendant
will be convicted of an offense not charged by the Grand
Jury. *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir.
1977).

    The introduction of evidence regarding the
undercover operation will broaden the Indictment and create
an impermissible risk that either defendant will be
convicted of a crime for which he has not been charged, or
that the jury will convict because it believes that he is a
bad person who deserves punishment. *Wozniak*, 126 F.3d at
109. In *Wozniak*, defendant was indicted for cocaine and
methamphetamine transactions. At trial, the Government also
introduced evidence of marijuana transactions and defendant
was convicted. The Second Circuit reversed and found that
the Indictment had been constructively amended by the
admission of the marijuana evidence. *Id*. at 111; *see also,
Zingaro*, 858 F.3d at 102-03(introduction of extortionate

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia  06 Cr. 893
Page 5 of 10

act not alleged in the Indictment amounted to constructive
amendment).

Here, the introduction of evidence of the
undercover operation will constructively amend the
Indictment and create a likelihood that defendant will be
convicted for an act not charged in the Indictment. At a
minimum, the evidence will prove facts materially different
from those alleged in the Indictment and will amount to a
prejudicial variance. *See United States v. Dupre*, 462 F.3d
131, 140 (2d Cir. 2006)(discussing difference between
constructive amendment and variance).

In addition to impermissibly broadening the scope
of the Indictment, evidence of the undercover operation
should also be excluded because it appears that the
undercover operation occurred <u>after</u> the criminal conduct
charged in the Indictment.[1]  While nothing in Rule 404(b)
prohibits the use of subsequent evidence if it otherwise
meets the Rule's criteria, *United States v.* Germosen, 139
F.3d 120, 128 (2d Cir. 1998), evidence of the undercover
operation is not relevant to show defendant's intent and
knowledge for acts that occurred years earlier. *See United
States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993); *United
States v. Sergentakis*, S1 05 Cr. 230, 2006 WL 1004468, at
*2-3 (S.D.N.Y. Apr. 17, 2006). Because there was an
extensive lapse of time between many, if not all, of the
tax filings in the Indictment and the undercover operation,
the Government cannot show sufficient similarities in time
and manner to establish relevance to the charged conduct.

The probative value of the undercover operation
evidence is also substantially outweighed by the danger of
prejudice to the defendant.  As the Supreme Court noted in
*Old Chief v. United States*, 519 U.S. 172, 181 (1997),
"[a]lthough propensity evidence is relevant, the risk that
a jury will convict for crimes other than those charged--or
that, uncertain of guilt, it will convict anyway because a

---

[1] Counts One through Seven of the Indictment refer to tax returns filed
in 2000 and 2001 and prior to the undercover operation. Although Counts
Eight through Fourteen refer to tax returns filed on April 15, 2003,
upon information and belief all of the returns in those Counts were
filed prior to the April 2003 undercover operation.

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia    06 Cr. 893
Page 6 of 10

bad person deserves punishment--creates a prejudicial effect that outweighs ordinary relevance."

          In the event the Court determines that the undercover operation evidence is admissible, the Court should nonetheless exclude the videotape recording.  The Government recently provided counsel with a copy of the videotape, which is poor quality and apparently was recorded upside down.  The Government has also informed counsel that a large portion of the tape is missing and that the videotape is incomplete. Because a substantial portion of the videotape is missing, the recording as a whole is untrustworthy and should not be admitted at trial.[2] *See United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973).

II.    Tax Returns/Analyses for the Years 1999 through 2003

          The Government has provided notice that it may introduce evidence of "tax returns prepared by the defendant for tax years 1999 through 2003, and analyses thereof, that reflect a pattern of false statements consistent with the specific false returns charged in the Indictment."  Because the charges in the Indictment are limited to tax return filings in tax years 2000 through 2002, admission of the above evidence would constructively amend the Indictment and violate defendant's Fifth Amendment rights. *See supra* I.

          The admission of additional tax returns and analyses for the tax years 1999 through 2003 would significantly broaden the charges contained in the Indictment and result in defendant being tried on charges not returned by the Grand Jury. The charges in the Indictment are very specific and are limited to fourteen different tax filings for the tax years 2000 through 2002.[3]

---

[2] The Government has indicated that it may only seek to introduce "still" photographs that were captured from the video recording. In light of the missing portion of the videotape, any evidence garnered from the recording should be deemed untrustworthy and inadmissible.

[3] While the fourteen counts in the Indictment are limited to filings in tax years 2000-2002, the Government alleges that the fraudulent scheme spanned a somewhat longer period, 2000 through 2003. Ind. ¶ 3.

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia  06 Cr. 893
Page 7 of 10


While the Government may be afforded some latitude in
presenting background evidence of the alleged fraudulent
scheme, Ind. ¶ 3, there is no reason to allow evidence in
the form of hundreds of tax returns and analyses for the
tax years 1999 through 2003.  Defendant submits that the
introduction of such evidence would broaden and
constructively amend the Indictment and create a likelihood
that he would be convicted for acts not found by the Grand
Jury.  *Wozniak*, 126 F.3d at 109; *Zingaro*, 858 F.3d at 102-
03; *Fasciana*, 226 F. Supp.2d at 449.

    The evidence should also be excluded because it
is not relevant and its probative value is substantially
outweighed by its prejudicial effect. Although the first
fraudulent tax return filings are alleged to have occurred
in 2000, the Government is seeking to introduce returns and
analyses from 1999. Alleged criminal acts that occurred in
1999 are not relevant to the fourteen alleged fraudulent
tax returns filed years later. The probative value of acts
that predate the allegations in the Indictment is also
minimal, and is significantly outweighed by the prejudicial
effect of such propensity evidence. *See United States v.
Newton*, S1 01 Cr. 635, 2002 WL 230964, at *4-5 (S.D.N.Y.
Feb. 14, 2002)

    Accordingly, for the forgoing reasons the
Government should be precluded from offering evidence of
tax returns and analyses for the time period beyond that
alleged in the Indictment.

III.  Number of Tax Returns and Refund Rates for Returns
      Prepared by Defendant for Tax Years 1998 through 2004

    The Government has also provided notice that it
may introduce evidence regarding the number of tax returns
and the refund rates for tax returns prepared by the
defendant for each of the tax years 1998 through 2004.  For
the reasons set forth Sections I and II, *supra,* defendant
submits that the proposed evidence should be excluded
because it impermissibly broadens the Indictment and
violates defendant's Fifth Amendment rights.

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia   06 Cr. 893
Page 8 of 10

The evidence should also be excluded because it is not relevant.  Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination at issue more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Here, the issue before the Court is whether defendant knowingly prepared false and fraudulent tax returns for the fourteen clients listed in the Indictment. The sheer volume of tax returns prepared by defendant in each of the tax years 1998 through 2004 has no bearing on the fourteen individual returns that form the basis for the charges in the Indictment.  Since the Indictment does not even allege criminal behavior in 1998, 1999 and 2004, it is difficult to conceive what relevance the proposed evidence would have to the alleged fraudulent returns filed in tax years 2000 through 2002. Evidence regarding the volume of tax returns prepared by the defendant can have no purpose other than to show that defendant has a propensity to commit crimes, in violation of Rule 404(b).

Evidence regarding the refund rates for returns prepared by defendant should also be excluded on the grounds that the evidence is not relevant, will unnecessarily lengthen the trial and is being admitted to show propensity. The proposed evidence regarding the overall refund rates for all of defendant's clients has no bearing on whether the fourteen clients alleged in the Indictment were entitled to certain deductions, exemptions and tax credits.

To obtain a conviction, the Government must prove beyond a reasonable doubt that the deductions and exemptions alleged in the Indictment were false and fraudulent, and that defendant knew that they were false and fraudulent when he filed the tax returns.  Any evidence regarding refund rates will inevitably lead to questions regarding the compilation and analysis of the data, including questions regarding the demographics of the individual tax filers. Such questioning will mislead and confuse the jury and unnecessarily lengthen the trial. *See, e.g., United States v. Aboumoussallem,* 726 F.2d 906, 912 (2d Cir. 1984)(proper to exclude evidence of uncharged crimes under Rule 403 where it would amount to a trial

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia  06 Cr. 893
Page 9 of 10

within a trial risking jury confusion and undue delay). A
court has discretion to exclude evidence that is
only slightly probative if its introduction would confuse and
mislead the jury by focusing its attention on collateral
issues.  *United States v. Prousalis*, 03 Cr. 1509, 2004 WL
1198495, at *8 (S.D.N.Y. June 3, 2004); *Newton*, 2002 WL
230964, at *4-5.

        Finally, the Court should reject any argument
that a proper limiting instruction to the jury will protect
defendant against any possible prejudice from the
introduction of 404(b) evidence.  It is well settled that a
limiting instruction is not an effective shield against the
dual risks of misuse and unfair prejudice.  *United States v.
Forrester*, 60 F.3d 52, 60 (2d Cir. 1995).  As the Second
Circuit has noted, "to regard cautionary instructions as
talismans for the solution to any possible prejudice
problem is tantamount to effecting a repeal of the
prejudice rule, which by its terms concedes the possibility
that the negative aspects of some evidence may simply be
unmanageable for the factfinder regardless of
instructions."  *United States v. Schiff*, 612 F.2d 73, 82
(2d Cir. 1979).

SEIFF KRETZ & ABERCROMBIE

Hon. Kenneth M. Karas
U.S. v. Nketia  06 Cr. 893
Page 10 of 10

### Conclusion

For the forgoing reasons, the Court should grant
defendant's application and exclude the proposed 404(b)
evidence.

Respectfully submitted,

Roland Acevedo (RA 8915)
Seiff Kretz & Abercrombie
444 Madison Avenue, 30th fl.
New York, N.Y. 10022
(212) 371-4500


Shamsey Oloko (SA 9747)
The Thorgood Law Firm
100 Park Avenue--20th fl.
New York, N.Y.

Counsel for defendant
Yaw Nketia


cc: AUSA William Komaroff

# EXHIBIT F

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 5, 2007

By Hand Delivery

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:    United States v. Yaw Nketia
06 Cr. 893 (KMK)

Dear Judge Karas:

The Government respectfully submits this letter in opposition to the defendant's March 2, 2007 in limine motion seeking an order pursuant to Federal Rules of Evidence 402, 403, and 404(b) precluding the Government from introducing certain evidence at trial. For the reasons that follow, the in limine motion should be denied because the proffered evidence is both directly relevant to prove the scheme alleged in the Indictment and, in any event, admissible under Rule 404(b) as probative of the defendant's motive, intent, knowledge and/or absence of mistake.

A.    Background and the Evidence the Government Expects to Elicit at Trial

The defendant is charged in a 14 Count Indictment with assisting in the preparation fraudulent income tax returns for clients of his tax preparation business, Caesar Tax & Brokerage Services ("Caesar's"). (Indictment ¶¶ 1, 3, 4.) Specifically, the Indictment alleges that the defendant prepared U.S. Individual Income Tax Returns, Forms 1040, and supporting schedules, for the tax years 2000 through 2002, knowing those tax returns and accompanying schedules contained false and fraudulent information. (Id. ¶ 3.) The Indictment alleges, and the evidence at trial will show, that the defendant committed the charged offenses as part of a scheme of preparing false returns, primarily through the use of false dependants and/or overstated itemized deductions. (Id.)

The Government expects to call a number of taxpayers whose returns are identified in Counts 1 through 14. Although each witness's experience with the defendant is slightly different, the Government expects that they will all testify that (1) their returns were prepared by the defendant, (2) their returns listed fictitious foster children as dependants and/or contained

Hon. Kenneth M. Karas                                                      March 5, 2007
Page 2

fictitious itemized deductions, and (3) they did not supply the fictitious information to the
defendant.

The evidence at trial will establish that the defendant's conduct charged in Counts 1
through 14 was part of a scheme to assist in the preparation of false returns. The evidence will
include:

(1) an undercover operation conducted at the defendant's office on April 9 and April 10,
2003 in which the defendant discussed and prepared a return for the undercover listing a "foster
child" which the defendant knew was not a bona fide dependant of the undercover;

(2) the number of tax returns prepared by the defendant for each of the tax years 1998
through 2004 and the refund rates he obtained for those tax years, reflecting a rapidly expanding
volume business from 1998 through 2002 with refund rates of at least 95%;

(3) tax returns prepared by the defendant for tax year 2002 which show hundreds of
returns that were rejected by the IRS's electronic filing system for reasons having to do primarily
with improperly listed dependants (e.g., dependants who had previously been listed on other
returns or dependants whose names did not match the listed social security numbers), and the
subsequently accepted returns prepared by Nketia for these same taxpayers, many of which
included "foster children" claimed as dependants; and

(4) other returns prepared by the defendant for the taxpayers identified in Counts 1
through 14.

B.    Discussion

1.    Applicable Law

Each category of proffered evidence described above is admissible for two independent
reasons.

First, the proffered evidence is admissible to prove the defendant's scheme to
fraudulently generate income tax refunds and credit for his clients as described in paragraph 3 of
the Indictment. Evidence concerning non-charged tax returns that are part of the same series of
transactions as the specific charged offenses, or are inextricably intertwined with the evidence
regarding these specific charged offenses is necessary to tell the complete story of the charged
offenses. Such evidence is necessary to give the jury a complete and accurate picture of the
defendant's criminal conduct. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)
(uncharged crimes not subject to Rule 404(b) "if it arose out of the same transaction or series of
transactions as the charged offense, if it is inextricably intertwined with the evidence regarding
the charged offense, or if it is necessary to complete the story of the crime on trial"); United

Hon. Kenneth M. Karas                                              March 5, 2007
Page 3

States v. Skowronski, 968 F.2d 242, 246 (2d Cir. 1992) ("[E]vidence that does not directly
establish an element of the offense charged [is admissible] in order to provide background for the
events involved in the case.").

 Second, the evidence concerning other tax returns prepared by the defendant is admissible
under Rule 404(b) to prove "motive . . . intent . . . knowledge, . . . [and] absence of mistake or
accident." Fed. R. Evid. 404(b). As explained by the Second Circuit,

> Rule 404(b) allows evidence of other crimes, wrongs or acts to be
> admitted for purposes other than showing a propensity to act in a
> certain manner, such as "proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity or absence of mistake or
> accident." Under the "inclusionary approach to the rule followed
> by this circuit, such evidence is "admissible for any purpose other
> than to show a defendant's criminal propensity."

United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (quoting United States v.
Harris, 733 F.2d 994, 1006 (2d Cir. 1984)); see also United States v. Germosen, 139 F.2d 120,
127 (2d Cir. 1998); United States v. Stevens, 83 F.3d 60, 68 (2d Cir. 1996). As long as such
evidence is "'relevant to some disputed issue at trial,' and satisfies the probative-prejudice
balancing test of Fed R. Evid. 403" it is admissible. United States v. Brennan, 798 F.2d 581, 589
(2d Cir. 1986) (quoting United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980)).

 Here, the Government must prove that the defendant willfully assisted in the preparation
of false tax returns.[1] Willfulness in the context of violations of criminal tax statutes means a
"voluntary, intentional violation of a known legal duty." United States v. Bishop, 412 U.S. 346,
360 (1973); Spies v. United States, 317 U.S. 492, 498 (1943). By pleading not guilty and putting
the Government to its proof, the defendant has put his willfulness, and, therefore, the question of
intent at issue. In fact, because, the Government believes, there will be no serious dispute that
the tax returns at issue were both false and filed with the IRS, the facts likely to be in serious
dispute will relate to the defendant's willful assistance in the false filings, i.e., his intent. Where
there is no doubt that the issue of intent will be disputed, the admission of Rule 404(b) evidence
in the Government's direct case is appropriate. United States v. Colon, 880 F.2d 650, 660 (2d
Cir. 1989) (citing United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987)).

---

 [1] The crime of assisting in the preparation of false tax returns has three elements: (1) that the
defendant advised or assisted in the preparation of a federal tax return, which was subsequently filed
with the IRS; (2) that the return contained at least one entry that was materially false; and (3) that
the defendant acted willfully at the time he aided or assisted the preparation or presentation of the
materially false return. See Sand, Modern Federal Jury Instructions, Instruction 59-27; United States
v. Perez, 565 F.2d 1227, 1233-34 (2d Cir. 1977); charge of the Hon. Jed S. Rakoff in United States
v. Contreras, 04 Cr. 1363 (JSR) (Dkt. # 15).

MAR-05-2007  20:50          US ATTORNEY                      212 637 2429    P.05

Hon. Kenneth M. Karas                                          March 5, 2007
Page 4

As described below, each category of evidence relating to non-charged tax returns should be admitted both as relevant to proving the scheme alleged in the Indictment as well as under the requirements of Rule 404(b).

2.    Evidence of the Undercover Operation

On April 9, 2003, the Government sent an undercover IRS agent posing as a Nigerian immigrant into Nketia's office to have a 2002 tax year income tax return prepared.  The undercover provided the defendant with information that, if reported accurately, would have resulted in a federal tax return showing that the undercover owed additional taxes.  Rather than preparing such a return, the defendant explained to the undercover that she could receive a refund if she could find someone to give her a dependant or dependants to list on her return.  The undercover returned to the defendant's office the following day with a name and social security number that she informed the defendant had been given to her by an American friend.  The defendant participated in the preparation of a return that falsely listed that dependant as a "foster child" of the undercover when the defendant had already been informed by the undercover that she had no qualifying dependants.  See generally GX 20-30.

The evidence about the undercover operation is probative of the ongoing nature of the defendant's scheme to prepare fraudulent returns and the defendant's willfulness with respect to the specific crimes charged.  The Indictment alleges that the defendant engaged in fraudulent conduct with respect to tax returns filed for the tax years 2000, 2001, and 2002.  The tax return that the defendant prepared for the undercover was for the 2002 tax year, and it contained a fictitious dependent described as "foster child," as do many of the returns charged in the Indictment.  Evidence of the undercover operation makes it clear that the Nketia included a fictitious dependant on a return knowing it was false.  The Indictment includes other tax returns that the defendant prepared in 2003 for the 2002 tax year and his conduct with respect to the undercover is thus probative of the ongoing scheme.

Moreover, the undercover operation is relevant to the defendant's state of mind for Rule 404(b) purposes.   The Government will prove that foster children listed on the Indicted returns were not in fact that foster children of the taxpayers.  The defendant's only viable answer to this fact is to claim either that unknown to him, the clients themselves provided him with false information and/or he simply made an error in including the information on the Indicted returns.  Evidence that the defendant educated the undercover about providing fictitious dependents, and then using the fraudulent information provided by the undercover to prepare a return that would entitle her to a refund is highly probative of the defendant's intent as it relates to the listing of fake foster children on the Indicted returns.

The defendant's arguments to preclude evidence of the undercover operation are meritless.  First the defendant argues that allowing the evidence will result in a constructive amendment of the Indictment and run the risk of the jury convicting the defendant of a crime

Hon. Kenneth M. Karas                                              March 5, 2007
Page 5

with which he was not charged. There is no such risk here. The jury should be asked on the
verdict form to specifically render a verdict of guilt or innocence only with respect to the specific
returns charged in the Indictment. Moreover, the jury can and should be instructed that with
respect to the undercover operation, such evidence is offered to prove the nature of the
defendant's scheme, as well as his knowledge, intent, and absence of mistake, and that the
defendant cannot be convicted of a crime for simply assisting in the preparation of the
undercover's tax return.

        Second, the defendant argues that evidence of the undercover operation is not relevant
because "there was an extensive lapse of time between many, if not all, of the tax filings in the
Indictment and the undercover operation." (Def. Ltr. at 5.) This contention is factually incorrect.
The undercover operation took place during April 2003, in the tax season for the filing and
preparation of 2002 tax year returns. The Indictment contains 7 counts relating to the 2002 tax
year. In addition, as to conduct alleged to have occurred in earlier years, the Indictment contends
that the defendant engaged in an ongoing scheme which dated from at least 2000 through 2003.
Thus, conduct in 2003 is relevant to proving conduct throughout the duration of the alleged
scheme.

        Finally, the defendant contends that probative value of the undercover operation is also
substantially outweighed by "the danger of prejudice to the defendant." (Def. Ltr. at 10).
Prejudice to the defendant is not the relevant inquiry. All evidence tending to show the
defendant is guilty is prejudicial. The test is whether or not the probative value of the evidence is
outweighed by the risk of "unfair prejudice," to the defendant, i.e., the risk that the jury will
misuse the evidence for some impermissible purpose. Fed. R. Evid. 403. Here, given proper
instructions, the risk of unfair prejudice is extremely small because the evidence goes right to the
heart of the defendant's intent, and will not tend to inflame or confuse the jury in any way
because it is generally of the same type that the jury will hear from the witnesses whose tax
returns are referenced in the Indictment.[2]

                3.      Evidence Concerning Other 2002 Returns Prepared by the Defendant

        The Government expects to introduce evidence showing that for tax year 2002, the
defendant attempted to file hundreds of tax returns that were rejected by the IRS's electronic
filing system because of various problems with the social security numbers of the dependants

_____

        [2]The defendant also asks the Court to preclude the use of a videotape taken during the
undercover operation. (Def. Ltr. at 6.) The Government does not intend to offer the videotape
because of its generally low quality and the fact that it is incomplete. Nonetheless, the Government
will offer at least one still frame of the defendant taken from the video. The foundation for the still
frame will be laid by the undercover and the completeness of the video is simply irrelevant to the
admissibility of a still photo clearly identifying the defendant as the person speaking to the UC about
the preparation of her tax return.

Hon. Kenneth M. Karas                                              March 5, 2007
Page 6

listed on the returns, such as the social security number had previously been used on another
return or did not match the name listed on the return.  See GX 36 and GX 37.  In many instances
returns for the taxpayers identified on the reject list were subsequently filed successfully by
Nketia.  Many of these returns listed foster children as dependants.  See GX 38.

  The large number of rejected returns and the reasons for the rejection is highly probative
both as evidence of the ongoing nature of the defendant's scheme as well as on the question of
the defendant's willfulness in assisting in the preparation of returns with fraudulent dependent
information.  This evidence demonstrates that Nketia regularly filed returns with false dependent
information and that such filings were not isolated accidents or mistakes.  As Nketia explained to
the undercover, filing electronically allowed Nketia to learn quickly whether the dependant
information he had included on a particular return was "okay or not."  See GX 24-T at p. 2.
Further, the evidence that Nketia subsequently filed returns listing foster children dependants for
the taxpayers who appear on the reject list that is GX 36 supports the conclusion that he was
including dependant information that he knew was not genuinely associated with the taxpayer for
whom he was preparing the return.  Rather, Nketia used the IRS's electronic filing system to test
the validity of social security numbers that were used to fraudulently lower the client's taxable
income and/or qualify them for an Earned Income Tax Credit.

  The defendant's objections to this evidence as irrelevant and impermissibly broadening
the Indictment should be rejected.  The proffered evidence is limited to the 2002 tax year – the
height of the defendant's fraudulent activity – and will demonstrate that the use of fraudulent
dependants was a modus operandi of the defendant's tax preparation business.  The sheer volume
of rejected returns coupled with the successful refiling of large numbers of returns listing foster
children as dependants tends to prove that the listing of fake dependants was intentional and not a
result of accident or mistake.

    4.  Evidence Concerning the Volume of the Defendant's Business and Refund
       Rates

  The Government intends to offer evidence concerning the growth in volume of the
defendant's business as well as evidence concerning the percentage of returns filed by the
defendant that claimed a refund.  This evidence is probative of the defendant's motive for
committing the charged offenses: namely, his efforts to build a high volume tax return business
by getting his clients refunds.

  The evidence will show that the defendant operated a business that increased significantly
in volume every year from 1999, when he filed only 264 returns (for tax year 1998), through
2003, when he filed 3,974 returns (for tax year 2002).  During this same period, the returns
prepared by the defendant claimed refunds in at least 95% of the cases.  Thereafter, in May of
2003, the defendant was interviewed by the IRS, and was informed that he was the subject of a
criminal investigation.  The following year, 2004, the defendant filed 1,673 returns (for tax year

Hon. Kenneth M. Karas                                             March 5, 2007
Page 7

2003), a decrease of 58% from the previous year and in the years that followed, the defendant's business remained flat. The defendant typically charged between approximately $100 and $150 to prepare a return. The way he made money was by preparing a large number of returns. In fact, certain of the Government's witnesses are expected to testify that they went to Nketia specifically because they had heard that he got his client's large refunds. The rapid growth in Nketia's business over the years that the Indictment alleges he was preparing fraudulent returns provides significant evidence of why the defendant would knowingly commit a federal crime when he stood to gain relatively little money for each specific offense. Evidence that he prepared an expanding volume of such returns, most of which claimed refunds, is highly probative of that motive.

        The defendant's contention that the proffered evidence is irrelevant simply ignores its probative value on the question of motive. The defendant also contends that evidence concerning the percentage of returns prepared by the defendant that claimed a refund will raise questions regarding compilation and analysis of the data as well as the demographics of the individual taxpayers. This contention should likewise be rejected. The Government does not seek to argue that the defendant's refund rate is high relative to some standard. Rather, the Government's contention is that the absolute value of the refund rate (95% or higher in the tax years 1998 through 2002), is probative on the motive question; namely that the defendant grew a high volume business by getting his clients refunds. When a client would not otherwise qualify for one, the defendant had a motive to get the client a refund anyway.

        5.    Evidence Concerning Uncharged Returns Prepared by the Defendant for
              Taxpayers Referenced in the Indictment

        Some of the taxpayers referenced in the Indictment went to Nketia for assistance in preparing returns for years other than those charged in the Indictment. Some of those returns were also fraudulent. In order for the witnesses to fully tell the story of their dealings with Nketia, they should be permitted to testify concerning other returns prepared for them by the defendant. In some instances, the witnesses will testify that other returns prepared for them by Nketia also contained material false statements. Such evidence is both inextricably intertwined with the evidence regarding the specific charged offenses, and, is, therefore, necessary to complete the story of the crime on trial. Moreover, under Rule 404(b), it is probative on the question of intent. Multiple fraudulent returns for the same taxpayer would tend to undermine any claim by the defendant that his participation in the filing of the charged false return was anything other than intentional.

Hon. Kenneth M. Karas                                   March 5, 2007
Page 8

    C.    <u>Conclusion</u>

       For the reasons stated herein, the defendant's motion <u>in limine</u> should be denied it its entirety.  The Government's proffered evidence relating to returns other than those specifically charged in the Indictment is relevant both to prove the nature of the defendant's ongoing scheme, as well as to prove the defendant's motive, intent, knowledge and/or absence of mistake or accident with respect to the charged false filings.

                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney

          By:

                    William C. Komaroff
                    Todd Blanche
                    Assistant United States Attorneys
                    (212) 637-1111/2494

cc:    Roland R. Acevedo, Esq. (by fax)

# EXHIBIT G



Number of Tax Returns e-Filed by YAW NKETIA for Tax Years 1998-2005

Source: GX-39, GX-40, GX-41, GX-42, GX-43, GX-44, GX-45, GX-46

# EXHIBIT H

Nketia

100 Park Avenue · 20th Floor · New York, New York 10017 · +1 212 490 0704 · Fax +1 212 490 0706 · www.thorgoodlaw.com

Shamsey T. Oloko
Omar B. Gambari

Of Counsel
Dian R. Gray
Marcel Florestal
Andrew D. Walcott
Charles J. Whittier

March 28, 2007

**VIA FACSIMILE TRANSMISSION 706-290-7218**

Kenneth Barfield, Esq.
Tax Wise CCH,
6 Mathis Drive
Rome, GA 30165

Re:    Mr. Yaw "Ceasar" Nketia – EFIN 133243

Dear Mr. Barfield:

Per our conversation earlier today, please note that this firm represents the above-referenced ERO, Mr. Yaw "Ceasar" Nketia, who used your company's services to electronically transmit income tax returns to the Internal Revenue Service in the last several years, including the tax year 2002.

As I mentioned in our conversation, I need a letter from you, on your company's letterhead and addressed directly to me (with a copy to Mr. Nketia), indicating the following:

a.    That your company assisted Mr. Nketia with electronically transmitting income tax returns to the Internal Revenue Service in the tax year 2002 (you may more formally describe your company's role if you wish);

b.    The number of income tax returns you electronically transmitted for Mr. Nketia for the tax year 2002; and

c.    Your direct contact information.

Please note that the need for this letter is very urgent and your quick response will be much appreciated. Thank you for your kind assistance and cooperation. If you have any questions or comments, please do not hesitate to call me.

Very truly yours,

Shamsey Oloko

cc: Mr. Yaw "Ceasar" Nketia

*Ceasar Nketia*



Kenneth E. Barfield
Executive VP, Small Firm Services
CCH, a Wolters Kluwer business
6 Mathis Drive, NW
Rome, Georgia 30165 USA

v. 706.290.7104
f. 706.290.7218
kbarfield@taxwise.com

VIA FACSIMILE

March 28, 2007

Shamsey Oioko, Esq.
The Thorgood Law Firm
100 Park Avenue
20th Floor
New York, NY 10017

Re: Mr. Yaw "Ceasar" Nketia – EFIN 133243

Dear Mr. Oloko:

As you and your client, Mr. Nketia, requested in our phone conversation earlier today and as requested in your letter, Universal Tax Systems, Inc. d/b/a CCH Small Firm Services can confirm that Mr. Nketia was a customer of our TaxWise tax preparation software and electronic filing/transmission services for the tax year 2002. As you also requested, for the 2002 tax year our records reflect that Mr. Nketia, under EFIN 133243, electronically filed through our electronic filing center 1,852 federal income tax returns which were accepted by the Internal Revenue Service.

Sincerely,

Kenneth E. Barfield
Executive Vice President

cc: Mr. Yaw "Ceasar" Nketia

# EXHIBIT I

SEP-12-2007  14:20

**e-file Application Information  : EFIN Status**

Name:   BLACK CAESAR TAX & BROKERAGE     Social Security Number(SSN):  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

Listed below are the EFIN(s) Electronic Filing Indentification Number(s) and their statuses that have been assigned to this application.

**You can select any of the following actions from the table below:**
* Select *Edit* to edit an EFIN status. (The editable entries will appear in the section below.)
* To generate a letter, pick the type of letter from the *Letter Name*.

| EFIN | EFIN Status | Begin Date/Time | Added By | Edit |
|---|---|---|---|---|
| 1  133243 | Inactive | 03/26/2007 7:10:43AM | F3DBB | Edit |

**Electronic Filing Identification Number(s)(EFIN)**

EFIN:

*EFIN Status (Required):  [        ]

Begin Date/Time: 09/12/2007 9:46:47AM

* Select *Assign* to assign an EFIN. Your addition will appear in the table.
* Select *Clear* to clear the form.

**Electronic Return Originator (ERO) Activity by EFIN/Return Type**

The activity shown below by EFIN and Return Type represents the total YTD counts for returns submitted electronically to the IRS.

Customize | Find | View 5  First 1-8 of 8 Last

| EFIN | Return Type | Processing Year | Transmitted YTD | Accepted YTD | Rejected YTD |
|---|---|---|---|---|---|
| 1  133243 | 1040 | 2007 | 1418 | 1141 | 277 |
| 2  133243 | 1040 | 2006 | 1740 | 1424 | 316 |
| 3  133243 | 1040 | 2005 | 1818 | 1419 | 399 |
| 4  133243 | 1040 | 2004 | 2071 | 1501 | 570 |
| 5  133243 | 1040 | 2003 | 2479 | 1860 | 619 |
| 6  133243 | 1040 | 2002 | 0 | 1713 | 0 |
| 7  133243 | 1040 | 2001 | 0 | 1263 | 0 |
| 8  133243 | 1040 | 2000 | 0 | 637 | 0 |

Application Received Date:  11/30/1998       Tracking Number: 2003040918531096
Application Created:  12/21/1998 3:32PM       Last Modified: 03/26/2007 7:10AM
Application Submitted:  12/21/1998 3:32PM     Last Maintained By: F3DBB



**When you have finished EFIN Status, you may do any of the following:**
* Select *Previous* to go back to the e-file application Menu Page.
* Select *Next* to go to the Firm Suitability Information page.
* Select *Save* to save all changes made.
* Select *Cancel* to exit the application.

file://c:\TEMP\F3NWH93W.htm                                    09/12/2007

# EXHIBIT J



Number of Tax Returns e-Filed by YAW NKETIA for Tax Years 1999-2005

Source: Letter from Todd Blanche, Sept. 12, 2007, Ex. A