

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

October 22, 2007

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street, Ste. 533
White Plains, NY 10601

       Re:    United States v. Yaw Nketia
                   06 Cr. 893 (KMK)

Dear Judge Karas:

       The Government respectfully submits this letter in response to defendant Yaw Nketia's post-trial motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  As discussed below, Nketia's motion is premised on a mis-characterization of both the trial proof and the Government's theory at trial.  Moreover, the Court should reject Nketia's claim that he has "newly discovered" Brady material, because the evidence he proffers is neither new nor Brady material.  Accordingly, Nketia's motion should be denied without a hearing, and he should be sentenced without any further delay.

       A.    Applicable Law

           1.    Rule 33 Motions

       Rule 33 authorizes a district court to grant a new trial "if required in the interest of justice."  Such authority should be exercised, however, only in the most extraordinary circumstances.  United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993); United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992).  Because motions for a new trial are disfavored in this Circuit, "the standard for granting such a motion is strict," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and it should be granted only with great caution in exceptional circumstances. United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993); United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993); United States v. Imran, 964 F.2d 1313, 1318 (2d Cir. 1992); Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988) (only "'in the most extraordinary circumstances'") (quoting United States v. DiPaolo, 835 F.2d 46, 49 (2d Cir. 1987)).  It is well settled that a motion for a new trial should not be granted unless, after evaluating all of the evidence, the district court is left with a "real concern that an innocent person may have been convicted." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

       The burden is on the defendant to show the "essential unfairness of the trial," and this showing must be sustained not as a matter of speculation but as demonstrable reality.

Hon. Kenneth M. Karas
October 22, 2007
Page 2

United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956); see also United States v. Germosa, 95 Cr. 486, 1998 WL 152571, at *8 (S.D.N.Y. May 2, 1998).  While Rule 33 motions typically are based on newly discovered evidence or on identification of perjured testimony, United States v. Singer, 92 Cr. 964, 1994 WL 376047, at *2 (S.D.N.Y. July 18, 1994), the Second Circuit has stated that the relevant test is whether "it would be a manifest injustice to let the verdict stand."  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

"A district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only in the most extraordinary circumstances."  United States v. Zagari, 111 F.3d 307, 322 (2d Cir. 1997) (emphasis in original; internal quotation marks and brackets omitted); accord United States v. Wong, 78 F.3d at 79; United States v. Locascio, 6 F.3d at 949; United States v. Spencer, 4 F.3d at 118.  "A new trial pursuant to Rule 33 based on newly discovered evidence may be granted 'only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal.'"  United States v. Owen, — F.3d — , 2007 WL 2472019, at *4 (2d Cir. Sept. 4, 2007) (quoting United States v. Alessi, 638 F.2d 466, 479 (2d Cir.1980)).

Where a motion for a new trial is based on a claim of newly discovered evidence, the defendant bears the burden of establishing: (I) that the evidence is genuinely "new," i.e., that it was "discovered after trial"; (ii) that the evidence could not, with the exercise of due diligence, have been discovered before or during trial; and (iii) that the evidence "is so material that it would probably produce a different verdict."  United States v. Slutsky, 514 F.2d 1222, 1225 (2d Cir. 1975); accord Owen, 2007 WL 2472019, at *4; Zagari, 111 F.3d at 322; United States v. Siddiqi, 959 F.2d 1167, 1173 (2d Cir. 1992).

2.  Brady v. Maryland

The Government has a duty to disclose evidence favorable to the accused when it is material to guilt or punishment.  See Brady v. Maryland, 373 U.S. 83, 87 (1963).  The Government's failure to disclose such evidence violates due process.  Id.  However, the Second Circuit has made clear that "Brady does not . . . require the prosecution to disclose all exculpatory and impeachment material; it need disclose only material that 'if suppressed, would deprive the defendant of a fair trial.'"  United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)).

To demonstrate a Brady violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice."  United States v. Coppa, 267 F.3d at 140.  There "is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  Strickler v. Greene, 527 U.S. 263, 281 (1999).  "[T]he purpose [of Brady] is not to displace the adversary system as the primary means by which trust is uncovered, but to ensure that a miscarriage of justice does not occur." United States v. Bagley, 473 U.S. 667, 675 (1985).

Hon. Kenneth M. Karas
October 22, 2007
Page 3

"A 'reasonable probability' of a different result is . . . shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting United States v. Bagley, 473 U.S. at 678); United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting Bagley, 473 U.S. at 682). "[H]ence, the undisclosed evidence will be deemed material only if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" United States v. Payne, 63 F.3d at 1209 (quoting Kyles, 514 U.S. at 435).

The Government's failure to produce certain evidence is particularly unlikely to be material under the reasonable probability standard when the evidence relates to the credibility of a witness. United States v. Spencer, 4 F.3d 115, 119 (2d Cir. 1993) (quoting United States v. Sposato, 446 F.2d 779, 781 (2d Cir. 1971)). Accord United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995). Moreover, "a new trial is generally not required when the testimony of the witness is 'corroborated by other testimony.'" United States v. Payne, 63 F.3d at 1210 (quoting United States v. Petrillo, 821 F.2d 85, 89 (2d Cir. 1987)). Similarly, "a new trial is generally not required . . . when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Id. (citing Petrillo, 821 F.2d at 90, and United States v. Rosner, 516 F.2d 269, 273-74 (2d Cir. 1975)); see also United States v. Avellino, 136 F.3d 249, 256 (2d Cir. 1998) (no new trial where "the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence").

Brady applies only to "the discovery . . . of information which had been known to the prosecution but unknown to the defense." United States v. Agurs, 427 U.S. 97, 103 (1976). Critically, therefore, even where evidence is favorable and material, there is no "suppression" of the evidence, and the defendant is not entitled to relief, "if the defendant either knew . . . or should have known . . . of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982); accord United States v. Zackson, 6 F.3d 911, 918 (2d Cir. 1993); United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978).

B.   Discussion

The defendant's Rule 33 motion is without merit, for primarily four reasons. First, the "new evidence" concerning the number of returns filed using the defendant's electronic filing identification number ("EFIN") would not have resulted in a different verdict at trial. The number of returns filed by the defendant was admitted for a limited purpose – to establish motive. It was not offered as direct evidence of guilt as to any of the seven counts of which the defendant was convicted. Second, the IRS document that shows the number of returns filed by the defendant's EFIN for Tax Years 2000 through 2007 does not constitute "newly discovered evidence." The defendant is now, and always was, in the best position to know how many returns he filed in various tax years, including 2002. Even if it were true that the defendant only filed 1,860 returns in 2002, rather than the 3,974 filed under the defendant's Preparer Tax Identification Number ("PTIN"), that information was known to the defendant long before the

Hon. Kenneth M. Karas
October 22, 2007
Page 4

trial started. Third, the purportedly "new information" is not inconsistent with the Government's theory at trial. Fourth, this is not a <u>Brady</u> violation. The defendant has failed to establish (1) any willfulness on the part of the Government in failing to disclose this information; (2) that the "newly discovered evidence" is favorable to the defendant; or (3) that the information, if provided, would have yielded a different result at trial. Hence, as discussed below, the defendant's motion should be denied in its entirety.

    1.    <u>The "New Evidence" Would Not Have Resulted in a Different Verdict at Trial</u>

Eight counts of aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2) were submitted to the jury. The jury returned a guilty verdict with respect to Counts 1, 2, 4, 5, 6, 7, and 8 and a not guilty verdict with respect to Count 3.[1] Among other evidence presented by the Government, with respect to each count on which the defendant was convicted, the taxpayers in question testified that the defendant himself met with and advised them with respect to the preparation of their return. The "new evidence" that forms the basis for the defendant's motion does not bear in any way on the testimony of these witnesses.

For instance, Peterson Appiahackah testified that he met directly with the defendant to discuss the preparation of his 2002 return, and the defendant told him that he would look for dependent information to put on put on his return. (Tr. at 336.) Prince Bonsu testified that he met with the defendant who prepared his return and provided him with the false dependent information that appeared on it. (Tr. at 260-61, 266.) Frank Ndri testified that he met with the defendant and discussed with him getting a larger refund by paying the defendant extra for false dependents. (Tr. at 133.) Similarly, Naana Anson, Christiana Boakye, Edward Campbell and Frank Osafo each testified about their face to face discussions with the defendant over the preparation of their tax return.[2] What the testimony of each of these witnesses establishes (and a point on which each corroborates the other) is that the defendant himself personally participated in the preparation of each of the returns filed under his name. This proof of the defendant's direct participation in each of these filings was overwhelming evidence of guilt as to each of the Counts upon which the defendant was convicted.

Notwithstanding this testimony and evidence, the defendant now claims that if the jury would have been shown a single sheet of paper that shows the defendant filed 1,860

---

[1] The Government proceeded to trial on eight of the original fourteen counts, which were renumbered in a redacted Indictment. Herein, all references are to the redacted Indictment (Court Exhibit 1).

[2] <u>See</u> Tr. at 368-370 (Anson met with defendant in his home for assistance in preparing her 2000 return); Tr. at 100-103 (Boakye met with defendant, discussed preparation of return, and received copy of return from defendant); Tr. at 315 (Campbell met with the defendant to discuss preparation of return); Tr. at 231-32 (defendant met with Osafo and told him he would be getting a $6,000 refund).

Hon. Kenneth M. Karas
October 22, 2007
Page 5

electronic returns using EFIN 133243, rather than the 3,974 returns that were filed using the defendant's PTIN, the jury would have returned a different verdict. This proposition is not well-founded. First, the evidence about other returns filed by the defendant was introduced for a limited purpose. The Court specifically instructed the jury that with respect to evidence concerning returns other than those charged in the Indictment, it could consider such evidence "only as it bears upon the Defendant's intent, knowledge, motive, opportunity, absence of mistake or accident, as to the acts that are alleged in the Indictment." (Jury Instr. at 12.) Juries are presumed to follow the Court's instructions, United States v. Paulino, 445 F.3d 211, 216 n.1 (2d Cir. 2006). As noted in the Government's response to the defendant's Rule 29 motion, the fact that the defendant was acquitted on Count 3 (Comlon Agbodoh-Falscha) demonstrates that the jury carefully considered each count in the Indictment separately. Had the jury used the "similar acts evidence" for an impermissible purpose such as "to conclude that because the Defendant committed the other act or acts, he must also have committed the acts charged in the Indictment," see Jury Instr. at 12-13, it is unlikely that the jury would have reached a split verdict.

       The defendant baldly asserts that if the jury would have heard that only 1,860 electronic returns were filed using EFIN 133243, it "would have shaken the jury's confidence in the prosecution." (Def. Mem. at 16.) This is premised on the mistaken belief that one of the numbers – either the 1,860 or the 3,974 – must be inaccurate. That is to say, the defendant would have the Court believe that the 3,974 returns filed using the defendant's PTIN number cannot be reconciled with the 1,860 electronic returns filed using EFIN 133243. The defendant is wrong. Both numbers are accurate as to what they represent. There can be no dispute that 3,974 returns were filed using the defendant's PTIN number for tax year 2002. There is also no dispute that 1,860 electronic returns were filed using EFIN 133243 for tax year 2002. Although the Government is not aware of why there is a difference between the two numbers, there are plausible explanations. For example, as noted in the Government's September 12, 2007 letter, the PTIN search is more expansive. It captures electronic as well as paper filings. Also, EFIN 133243 was assigned to Black Caesar Tax and Brokerage. The 1,860 electronic returns filed in 2002 represent those returns filed using that EFIN. The defendant may have filed returns, either electronically or in hard copy, using a different EFIN. The Government is not aware of every available means the defendant utilized to file tax returns for tax year 2002.

       At best, the Government, or the defendant if he so chose, would have had to offer alternative numbers to the jury. As the defendant noted in its moving papers, Government Exhibit 101, attached to Meister Aff. at Exhibit G, showed the numbers of returns filed using the defendant's PTIN. The defendant also showed, by way of example, what a similar chart would look like using the number of returns filed using the defendant's EFIN. (See Meister Aff. Ex. J.) Rather than support the defendant's motion, this demonstrates the limited probative value of this "new evidence." Exhibit J exemplifies exactly why this motion fails. This demonstrative chart based on the "new evidence" still shows that 2002 was the biggest year for the defendant, and that the defendant tripled his business in three years – from tax year 1999 to tax year 2003. Further, it also shows that the defendant's business declined in tax year 2003 after the defendant learned about the IRS' investigation.

Hon. Kenneth M. Karas
October 22, 2007
Page 6

Therefore, the defendant's motion should be denied because there is virtually no support for the proposition in the defendant's moving papers that the jury would have returned a different verdict if the "new evidence" was presented to it. This Rule 404(b) evidence was a small piece of the overall proof against the defendant which included overwhelming direct evidence establishing the guilt of the defendant for fraudulently filing the tax returns that were the subject of the seven counts of conviction. The defendant has failed to show that this evidence, if admitted at trial, "is so material and noncumulative that its admission 'would probably lead to an acquittal.' " Zagari, 111 F.3d at 322; (quoting Siddiqi 959 F.2d at 1173; (quoting Alessi, 638 F.2d at 479)).

2.  The IRS Document That Shows the Number of Returns Filed by the Defendant's EFIN Number for Tax Years 2000 Through 2007 Does Not Constitute "Newly Discovered Evidence"

Even if the defendant could show that the "new evidence" would have led to a different result, the Rule 33 motion should still be denied. The defendant has failed to show that the evidence could have been discovered before or during trial – a necessary requirement before a new trial may be granted. See Owen, 2007 WL 2472019, at *4; Alessi, 638 F.2d at 479. Indeed, the defendant, more than anyone, including the Government, was in the best position to know how many returns he filed for tax year 2002.

The basis for the defendant's motion is that the Government purportedly presented inflated numbers to the jury. Obviously, the defendant was aware of the number of returns he filed for tax year 2002. At all times the defendant has had access to his own business records and files, and it was defense counsel's specific request, which included the stated belief that the number used by the Government significantly overstated the number of returns filed, that led to the discovery and production of the information from the EFIN database. If, as defendant now alleges, he really only filed 1,860 for tax year 2002, he obviously could have "discovered" this information prior to trial. See Zagari, 111 F.3d at 322.

In addition to the obvious fact that the defendant must have been aware of the number or returns he filed on behalf of his customers, the defendant's motion confirms the availability of this information prior to trial. As alleged in the defendant's moving papers, after the defendant was convicted, the defendant's former counsel contacted Tax Wise, a company the defendant apparently used to assist in filing electronic returns. (See Meister Aff. ¶ 9.) Tax Wise informed the defendant's former counsel that based on its records, the defendant filed 1,852 federal income tax returns for tax year 2002 using its service, and EFIN 133243. (Id. Ex. H.) When new counsel was appointed, the Government was contacted about the apparent disparity between the number of returns filed using the defendant's PTIN number, and the number of returns filed under EFIN 133243. Prior to defense counsel raising the issue, the Government was not aware of the existence of the records pertaining to the number of returns filed under EFIN 133243. Obviously, this information was readily available to the defendant from Tax

Hon. Kenneth M. Karas
October 22, 2007
Page 7

Wise.[3]  Further, as is also noted in the defendant's moving papers, the Government provided the requested information to the defendant on the same day the defendant's counsel contacted the Government about the information he learned from Tax Wise.  (Id. ¶ 11.)

The defendant claims he was "unaware of these IRS records prior to August 2007."  (See Def. Mot. at 1).  The defendant, however, misses the point concerning the alleged "new evidence."  It is not the IRS record itself that the defendant claims is exculpatory.  Rather, it is the information contained in the IRS record, suggesting that the defendant filed fewer returns than the Government alleged at trial.  At trial, the defendant chose not to challenge the Government's theory as to the number of returns filed by the defendant.  "Where the allegedly newly discovered evidence was known to the defense or readily obtainable by it before or during the trial and the defense trial strategy was not to utilize such known or obtainable evidence during the trial, the decision by the defense to change its strategy after an unfavorable verdict does not render the evidence 'newly discovered.'"  United States v. Harris, No. S1 92 Cr. 455 (CSH), 1993 WL 300052, at *18 (S.D.N.Y. July 30, 1993) (quoting United States v. Soblen, 203 F. Supp. 542, 565 (S.D.N.Y. 1961), aff'd 301 F.2d 236 (2d Cir. 1962)).  This is the case here.  The defendant was aware of the volume of business he conducted.  He was aware of the Government's evidence against him.  If he wanted to pursue a defense, or raise an argument that suggested the number of returns the Government intended to offer at trial was inflated, he had the available information long before the trial started.  He cannot bring such a claim now, months after the jury returned its verdict.  Alessi, 638 F.2d at 479.  Successfully Rule 33 motions require a showing "that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal."  United States v. Owen, 2007 WL 2472019, at *4.

      3. <u>The "New Evidence" Is Not Inconsistent With the Government's Theory at Trial</u>

The defendant's motion alleges that the "new evidence" is inconsistent with the Government's theory at trial.  The defendant bases this on a misunderstanding of the Government's proof at trial, as well as the Government's theory of the case.  As a preliminary matter, the difference in the PTIN numbers presented at trial and the EFIN based numbers are both consistent with the Government's theory of the case: namely that the defendant grew a high volume tax preparation business by getting people refunds.  That theory remains unchanged.

The defendant overemphasizes the evidence concerning the number of returns filed by the defendant.  The three day trial was largely about tax payers who went to the defendant for assistance in filing their taxes.  These witnesses testified about their experience dealing with the defendant, and the defendant's direct participation in each of the witnesses tax filings.  This was the heart of the Government's case.  The number of returns filed by the

---

[3] The actual one page document produced by the Government in September 2007 that is the subject of the defendant's motion was not in the possession of Tax Wise.  (See Meister Aff. Ex. I.)  The underlying information, however, was available because Tax Wise apparently assisted the defendant in filing returns on behalf of his customers.

Hon. Kenneth M. Karas
October 22, 2007
Page 8

defendant was presented in support of the defendant's motive to commit tax fraud. The motive here was that by getting the most of his clients refunds whether they were entitled to them or not, he was able to build a booming tax preparation business. As Frank Osafo testified, he went to the defendant to have his 2002 taxes prepared because he had heard through others in the Ghanian community that the defendant "could get you a good refund." (Tr. at 228.) The defendant's motive was overwhelmingly established by the evidence, and it remains unchanged even under the "new evidence." The defendant had a booming business that increased every year. This was based on the fact that he guaranteed a return to his customers whether or not they were entitled to one.

At trial, the defendant chose to attack the Government witnesses' credibility, rather than attack the numbers underlying the Government's theory about why the defendant committed this fraud. The defendant's summation highlighted this: "Now, the heart of the Government's case is the eight tax filers in the indictment. I'm sure you'll agree they ran the gamut. Some of them were a little – their testimony was a bit slow and difficult to follow, some was clearly amusing and raised a chuckle occasionally." (Tr. at 509.) Defense counsel continued for over ten pages of the transcript to attack the credibility of these eight witnesses. (Tr. at 509 - 520.) The defendant also chose not to shy away from his apparent success as a tax preparer: "My client's stealing from the government to assist those with modest means, and the government wants you to believe that the motive here is getting his numbers up so he can do a [high] volume of tax returns. As I said to you in the opening on Monday, there's nothing criminal in that. That's the purpose in all of our businesses. (Tr. at 519.) This summation by the defendant's counsel was sound trial strategy. As explained above, the defendant was not convicted because he filed 3,974 returns. He was convicted because of the overwhelming evidence and testimony from the witnesses who went to him to have their taxes prepared.

Hence, the Government's theory at trial remains unchanged. The purported "new evidence" in no way alters the fact that the was convicted based on overwhelming evidence of guilt. This evidence came in the form of testimony from individuals who went to the defendant for assistance in filing their taxes, and left with a refund to which they were not entitled. The defendant's motive was to increase his business, and he succeeded.

4. There is No Brady Violation

The defendant alleges that the information concerning the number of returns filed using EFIN 133243 constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963). For the same reasons the Rule 33 motion fails, the failure by the Government to turn over this information is not a Brady violation. Because Brady applies only to "the discovery . . . of information which had been known to the prosecution but unknown to the defense," the defendant's alleged Brady claim fails. United States v. Agurs, 427 U.S. at 103.

First, there is nothing to suggest, and defense does not argue otherwise, that this information was willfully withheld from the defendant. There would have been no reason to keep this information from the defendant. As discussed above, this information does not undercut the Government's theory of the case or help the defendant's cause. In addition, the

Hon. Kenneth M. Karas
October 22, 2007
Page 9

Government does not believe the 3,974 returns filed by the defendant using his PTIN should be discounted. To the contrary, the Government submits that the defendant did in fact file nearly 4,000 returns for tax year 2002. The fact that 1,860 returns were filed using the defendant's EFIN number does not alter the number of returns filed using the defendant's PTIN. They are different numbers reached using different search criteria.

Second, this evidence is not "favorable to the defendant." Coppa, 267 F.3d at 140. This evidence further confirms what the Government claimed at trial, that the defendant operated a high volume business, and that the success of his business depended on him giving his customers refunds. The fact that the number of returns filed using the defendant's EFIN is less than the number filed using the defendant's PTIN is not favorable to the defendant. It is a result of different search criteria. The most significant roadblock to the defendant's motion is that the evidence, if it had been available and admitted at trial, would have been consistent and similar to the evidence admitted at trial. To suggest that the jury would return a not guilty verdict because one search criteria showed that the defendant filed 1,860 electronic returns using a particular EFIN is inconsistent with the evidence at trial. There is nothing in the record upon which the defendant can rely in reaching this conclusion. For this reason alone, the defendant's motion fails.

Third, and most significantly, the defendant cannot show that the failure on the part of the Government to disclose this information results in prejudice to the defendant. Coppa, 267 F.3d at 140. As the Supreme Court has held, there "is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281 (1999). As discussed above, there is no probability that this information would have resulted in a different verdict at trial. See Payne, 63 F.3d at 1029. As discussed above, the evidence of 1,860 filings using the EFIN, even if introduced and used at trial by the defendant to undercut the Government's motive argument, would not have led to a different result. There was ample additional evidence upon which the jury verdict was based – including direct evidence from tax payers and devastating evidence of intent provided through the testimony of the undercover IRS agent. This evidence overwhelmingly established the defendant's guilt. Based on the overall record at trial, there is no basis to believe that the jury would have reached a different conclusion had they known that while the defendant's PTIN showed 3,974 returns filed by the defendant in 2002, his EFIN was used to file only 1,860 tax year 2002 returns.

Hon. Kenneth M. Karas
October 22, 2007
Page 10

## Conclusion

For these reasons, the Government respectfully requests that the defendant's motion for a new trial pursuant to Rule 33 be denied in its entirety, and request that the defendant be sentenced forthwith.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:   _____
Todd W. Blanche
Assistant United States Attorney
Tel.: (212) 637-2494
Fax:  (212) 637-2937

cc:   David Meister, Esq.
      Clifford Chance US LLP
      31 West 52nd Street
      New York, NY 10019
      (via facsimile)