UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                                                             :
            - against -                                      :   06 CR 893 (KMK)
                                                             :
                                                             :
YAW NKETIA,                                                  :
                                                             :
            Defendant                                        :
                                                             :
------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF YAW NKETIA'S
## MOTION FOR A NEW TRIAL

**DAVID MEISTER**
**JASON C. SPIRO**
**CLIFFORD CHANCE US LLP**
**31 West 52nd Street**
**New York, New York 10019**
**(212) 878-8537**

*Attorneys for Defendant*
Yaw Nketia

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.    The IRS Records In Question Were Not Previously Known To Mr. Nketia ..................... 2

II.   The Government's Suppression Of The IRS Records Was Prejudicial ........................... 4

CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................ 1, 2, 4, 8

*Kyles v. Whitley*, 514 U.S. 419 (1995) ................................................................................. 4, 5

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ...................................................... 4, 5, 8

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) ................................................................... 5

*United States v. LeRoy*, 687 F.2d 610 (2d Cir. 1982) ............................................................. 2

*United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975) ........................................................... 5, 8

*United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991) .......................................................... 8

*United States v. Zagari*, 111 F.3d 307 (2d Cir. 1997) ......................................................... 2, 5

**Rules**

Fed. R. Crim. P. 33 ............................................................................................................. 1, 2, 5

# PRELIMINARY STATEMENT

The Government's opposition to Mr. Nketia's motion for a new trial ("Govt. Opp.") boils down to two arguments: (i) Mr. Nketia had possession of the information contained in the IRS records in question all along and therefore has no claim for a new trial, whether under the rubric of *Brady v. Maryland*, 373 U.S. 83 (1963), or the "newly discovered evidence" prong of Fed. R. Crim. P. 33; and (ii) the jury would have been unaffected had it learned of the "single sheet" of IRS records that the Government only recently produced.

The Government misses the point in both respects.

*First*, whether Mr. Nketia could have used *his own records* in an attempt to counteract the Government's faulty evidence is a red herring. The Government did not suppress Mr. Nketia's records; it suppressed its own records. The Government and its IRS agent witnesses represented to the defense, the Court and the jury that the figures contained in the IRS records provided in discovery and introduced at trial reflected complete and accurate summaries of returns e-filed by Mr. Nketia. He had no idea, and could not have reasonably discovered, that the Government had failed in its obligation to disclose that *other IRS records* eviscerated the Government's volume evidence and, as a result, its sole basis to argue motive.

*Second*, the Government's attempt to minimize the impact of the newly discovered evidence by saying that the IRS records it introduced played a small part in the trial disregards how the Government repeatedly emphasized the inaccurate evidence to convict Mr. Nketia, and ignores how this particular trial jury would have assessed the Government's contentions once it realized they had no basis in truth. When assessed in that context, there is at least a "reasonable probability" the suppressed evidence would have affected the outcome of the trial, under *Brady*, or, alternatively, would have been so material and noncumulative that its admission "would

1

probably lead to acquittal," which requires a new trial under Rule 33 regardless of any constitutional violation.

As discussed fully below and in Mr. Nketia's original Memorandum of Law ("Def. Br."), therefore, Mr. Nketia's motion should be granted.

## ARGUMENT

## MR. NKETIA'S MOTION SHOULD BE GRANTED

### I.    The IRS Records In Question Were Not Previously Known To Mr. Nketia

The Government challenges Mr. Nketia's motion on the ground that he either knew or should have discovered the volume of his e-filings, which, if correct, would defeat his *Brady* claim and his non-constitutional Rule 33 claim. *See United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997) (under Rule 33's newly discovered evidence claim, the defendant must show that "the evidence is in fact 'new', i.e., it could not have been discovered, exercising due diligence, before or during trial"); *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (under *Brady*, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence") (internal citations omitted).  According to the Government, if Mr. Nketia had searched his records, he could have determined the volume of his e-filings for any tax year, and therefore cannot complain of the Government's nondisclosure of the same figures.  (Govt. Opp. 6-7).  The Government's argument should be rejected because it mischaracterizes the nature of the suppressed evidence and misapplies the law as to a defendant's duty to discover suppressed evidence.

The Government suppressed *IRS* records of e-filed tax returns, *not* Mr. Nketia's records. The records were solely in the Government's possession, far outside of Mr. Nketia's purview.

2

The issue here is not simply how many returns Mr. Nketia filed. Rather, Mr. Nketia's motion is grounded in the irrefutable fact that the Government suppressed *IRS* records that undercut the Government's case.

Mr. Nketia cannot be faulted for failing to try to find the specific suppressed IRS records when he had no clue they existed. Thus, this is not a case where Mr. Nketia made a calculated choice to hold back knowledge that the Government possessed compelling proof that its trial evidence was inaccurate. It was only by a chain of improbable events that Mr. Nketia discovered the inaccuracy post-trial: first, his counsel corresponded with TaxWise regarding the number of e-filings sent through their service; then, without prompting, TaxWise took the initiative to contact the IRS directly; next, the IRS provided TaxWise with information contradicting the trial evidence; and, finally, TaxWise volunteered that information to counsel. The discovery through TaxWise was a surprise. Mr. Nketia had no idea that his former vendor TaxWise could have or would have obtained such information from the IRS, nor that TaxWise would provide it to his lawyer. (Meister Decl. ¶ 13).

Saddling Mr. Nketia with such a heightened duty of discovery would be particularly inappropriate here inasmuch as the Government lulled Mr. Nketia into reasonably believing that the Government had already provided him with *all* of the relevant IRS records. By producing the IRS records in discovery, and contending that they proved motive, the Government represented to Mr. Nketia -- as well as to the Court and ultimately the jury -- that these records reflected the entirety of the IRS accounting of his electronic filings. Mr. Nketia was justified in presuming that the Government had satisfied its obligations, as it said it had, and that there were no additional -- hidden -- IRS records that proved otherwise.

3

The Government should be held to account because it made the strategic decision to present IRS records of the growth in Mr. Nketia's e-filing business to establish Mr. Nketia's motive to assist in the preparation of fraudulent tax returns. Before launching into this strategy, the Government arguably could have chosen not to produce any of the IRS e-filing volume records, without violating *Brady*. The Government could have stuck to trying to prove the charges without addressing how many returns Mr. Nketia e-filed each year. Had it presented the case on that basis, all of the volume evidence would have been less important. Once the Government decided to present volume evidence to prove motive, however, the time-honored principles of *Brady* required that it produce any evidence in its possession that contradicted or called into question the accuracy of the evidence it did use. Under these circumstances, the Government's efforts to bar Mr. Nketia from challenging the Government's suppression should be rejected.[1]

## II.        The Government's Suppression Of The IRS Records Was Prejudicial

To demonstrate a *Brady* violation where the defendant has shown that "the Government, either willfully or inadvertently, suppressed evidence," "a defendant must [also] show that . . . the evidence at issue is favorable to the defendant," and that "the failure to disclose this evidence resulted in prejudice." *Coppa*, 267 F.3d at 140. To establish prejudice, *Brady*'s standard is clear -- it requires Mr. Nketia to show a reasonable probability of a different result. *Id.* at 142.

---

[1]        The Government does not dispute that IRS knowledge is imputed to the Government here. (*See* Def. Br. 12-13). The Government points out, however, that the prosecutors did not willfully withhold the IRS records in question. (Govt. Opp. 8-9). That contention, which we do not challenge, is a red herring. Under long-established precedent, the prosecutors' inadvertent failure to disclose the IRS records satisfies the suppression prong of a *Brady* violation. *See Kyles v. Whitley*, 514 U.S. 419, 438 (suppression even where undisclosed evidence was known only to police investigators and not to the prosecutor); *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (suppression can be either willful or inadvertent). In addition, the Government has yet to comment on the question of whether the IRS agents who participated in this case were aware of the e-filing records, even if the prosecutors themselves were in the dark. (Def. Br. 7-8, 13). The Court should require the Government to respond on that issue.

This does not mean that Mr. Nketia must show that he would have been acquitted, as the Government seems to suggest. To the contrary, as articulated by the Second Circuit:

> [a] showing of materiality *does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal* (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). *[The] touchstone of materiality is a reasonable probability of a different result, and the adjective is important.* The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of trial.

*United States v. Gil*, 297 F.3d 93, 103 (2d Cir. 2002) (emphasis added) (quoting *Kyles*, 514 U.S. at 434). [2]

Applying this standard, Mr. Nketia has established a reasonable probability that the suppressed IRS evidence would have affected the outcome if disclosed at the trial. *See Coppa*, 267 F.3d at 140 (explaining that "the scope of the government's constitutional duty . . . is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of trial"); *United States v. Seijo*, 514 F.2d 1357, 1363 (2d Cir. 1975) (describing the standard as "the possible effect the evidence withheld might have had, if it had been available to the defense at the time of trial").

In response, the Government boldly argues that the suppressed evidence would not even have been "favorable" to Mr. Nketia, much less affect the outcome, because the new evidence

---

[2]    The Government's brief in part appears to mix and match the *Brady* standard with the Rule 33 standard on the prejudice point. (*See* Govt. Opp. 3-4). *Brady,* however, is different from Rule 33, which requires that the defendant show that the evidence "is so material and noncumulative that its admission would probably lead to an acquittal." *Zagari,* 111 F.3d at 322 (internal quotation marks omitted). In any event, as set forth in Mr. Nketia's original Memorandum of Law, we submit that both standards are met here. (*See* Def. Br. 13-17, 20).

shows a high volume of business, which the Government says is consistent with its motive theory at trial. (Govt. Opp. 7-9). As a threshold matter, the Government offers the Court no basis upon which to evaluate its claim that the accurate IRS records demonstrate "high volume," nor is there any support in the record for its opinion. In any event, this argument disregards the Government's motive theory at trial, which relied on year over year *growth*, not volume in a vacuum. The Government repeatedly asserted at trial that the volume evidence showed *growth* explained by the scheme. The newly discovered evidence refutes that argument. (*See* Def. Br. 14-16) (*Compare* summary chart of newly discovered evidence with Government's summary chart introduced at trial, Meister Decl. ¶ 12, Exhibits J and G). To be sure, the suppressed evidence would have been favorable to Mr. Nketia and more so.[3]

Next, the Government argues that the volume evidence was not important to its case. That contention, of course, is belied by the Government's strategic choices at trial. The Government emphasized the evidence during opening, witness testimony, closing and rebuttal. (*See, e.g.*, GX 101); (Tr. 528) ("damning" evidence of guilt). Even though motive is not an element of the tax crime charged, the Government put motive front and center, and it therefore became a critical part of the case by the Government's own making. The Government exploited the peak in volume to its advantage, and did so quite effectively. (*See* Def. Br. 14-15). Without

---

[3]    The Government also claims that the suppressed IRS records do not even contradict the trial evidence because, the Government contends, the trial evidence included returns filed both by hand and electronically. (Govt. Opp. 5). The Court should reject this claim for several reasons. First, the Government cannot rewrite the trial record as it sees fit. At trial, the Government characterized the IRS records as records of returns *electronically* filed, not hand-filed. Indeed, the Government highlighted the electronic filing feature as one Mr. Nketia intentionally employed to test whether a false return would be accepted, a test not available to hand filers. (*See* Def. Br. 17-18). Second, the Government concedes it can only guess as to the reason for the discrepancy -- its speculation should not work to Mr. Nketia's detriment. (Govt. Opp. 5). Finally, it is utterly ridiculous -- and unsupportable on this record -- to think that Mr. Nketia hand-filed more than 2,000 returns between January and April 15, 2003 (tax season), having never hand-filed any number close to that, before or after. (*See* Def. Br. 19).

that peak, its only motive theory would have fallen flat, and there would have been no explanation whatsoever as to why Mr. Nketia would have helped taxpayers file false tax returns, when the false filers paid Mr. Nketia the same fee as everyone else.

In the same vein, the Government suggests that defense counsel's decision in closing argument to "attack the Government's witnesses' credibility, rather than attack the numbers underlying the Government's theory about why the defendant committed th[e] fraud," was some sort of concession that the defense did not consider the volume evidence to be important. (Govt. Opp. 8). The Government's argument proves too much. Mr. Nketia and defense counsel were boxed in, and may well have believed that an attack on IRS records would have been futile, if not foolish. Even if Mr. Nketia had tried to raise a doubt as to the Government's volume proof, he would have been hard pressed to try to mount an argument, based only on his own records, that he actually had e-filed far fewer returns than the IRS records showed. It is easy to imagine the Government's sure-fire response to any attempt by Mr. Nketia to argue that his recollection and records should be believed over those of the IRS. The Government would have said that its IRS records are proof positive that Mr. Nketia was making up a story to explain them away, and the jury would have been none the wiser.

In any event, by arguing that the volume evidence was not important, the Government fails to address the real issue. The point is not simply whether or not the volume evidence the Government presented was important at the time. The point, which the Government misses, is that there plainly would have been an impact on the jury had it learned that the Government's motive theory was untenable and that its IRS records painted a misleading portrait.

The Government's argument that the volume of returns filed decreased markedly because Mr. Nketia learned he was under investigation provides a perfect illustration of the predictable

7

impact of the *Brady* evidence. (Tr. 500-01). By explaining the sudden drop off in filings in this fashion, the Government conceded that the returns he filed thereafter were legitimate because he would not have filed false returns while being watched. In other words, the Government's argument established a baseline number of legitimate returns -- the number following the peak -- and Mr. Nketia's e-filed volume, as established by the suppressed evidence, never varied from that baseline in any significant way, once his fledgling business got off the ground. The suppressed evidence would have given Mr. Nketia powerful means to turn the Government's concession against it because, without the peak, the jury would have seen that Mr. Nketia's business over the entire period was based on legitimate returns, not false ones. (*See* Def. Br. 15-16); (Meister Decl. ¶ 12, Ex. J).

Indeed, had this same trial jury encountered the accurate evidence following the Government's rendition of the flawed evidence, there is no question that there would have existed *at least* a "reasonable probability" that the Government's suppression affected the outcome of the case. *Coppa*, 267 F.3d at 142*; see United States v. Wallach*, 935 F.2d 445, 458 (2d Cir. 1991) (framing the question as whether "'the jury probably would have altered its verdict if it had the opportunity to appraise the impact of the newly-discovered evidence not only upon the factual elements of the government's case but also upon the credibility of the government's witness'") (quoting *Seijo*, 514 F.2d at 1363-64). If the jurors had been aware of the truth, it is reasonably probable that one or more of them would have rejected the IRS e-filing record evidence and the Government's after-the-fact attempts to explain away the errors, and, moreover, would have had serious doubts as to the credibility of the Government's case. *See Seijo*, 513 U.S. at 1364 (recognizing that had a witness' false statement been known to the jury, it "would have exerted a compelling impact on his credibility as to the unsubstantiated aspects of

8

his testimony . . . the exposure could have created a sufficient doubt in the minds of enough jurors to affect the result"). Moreover, there should be little doubt that at least one reasonable juror, so impacted, would hesitate to convict Mr. Nketia of this tax scheme without any proof or explanation as to why he provided wrongful assistance. [4]

---

[4]    The Government also seeks refuge in its other evidence, apart from volume, principally Mr. Nketia's direct dealings with taxpayers, and to some extent the undercover encounter with Agent Small. (*See* Govt. Opp. 7-9). As discussed above, this argument ignores the impact on the jury of learning of the significant flaws in the Government's case. In any event, stripped of the only evidence of motive, the case would have rested almost exclusively on the Government's cooperating witnesses, each of whom had a powerful motive to lie. The undercover evidence, which also was not relevant to motive, apparently was not as compelling for the jury as it was for the Government. The acquittal on the charge involving Mr. Agbodoh-Falschau, the one taxpayer who did not have direct contact with Mr. Nketia (Tr. 159), highlights the weakness in the corroborative value of the Agent Small story. Like Mr. Agbodoh-Falschau, Agent Small ultimately provided her tax filing information to an unidentified individual in Mr. Nketia's reception area but not to Mr. Nketia. (*Id.*). Thus, Agent Small's interaction with Mr. Nketia more closely resembled the acquitted count than the counts on which Mr. Nketia was convicted.

9

# CONCLUSION

For the foregoing reasons, the Court should grant Mr. Nketia's motion for a new trial.


Dated: New York, New York
       October 29, 2007


                    Respectfully Submitted,

                    CLIFFORD CHANCE US LLP


                    BY:    DAVID MEISTER (DM-0942)
                           JASON C. SPIRO (JS-2420 )

                    *Attorneys for Defendant Yaw Nketia*
                    31 West 52nd Street
                    New York, NY 10019
                    (212) 878-8000


                         10